# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ELIZABETH GUZMAN,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:17-cv-06590-NLH

**OPINION**

---

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, NJ 07065

    *On behalf of Plaintiff*

QUINN E.N. DOGGETT
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET - SIXTH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**<u>HILLMAN</u>, District Judge**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Supplemental Security Income ("SSI")[1] under Title XVI of the Social Security

---

[1] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to

Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time between June 17, 2009 and April 16, 2013. For the reasons stated below, this Court will affirm that decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Elizabeth Guzman, claims that she is entitled to SSI due to cervical and lumbar degenerative disc disease with radiculopathy, diabetes mellitus, carpal tunnel syndrome, asthma, depression, and anxiety. Plaintiff had previously filed for SSI claiming a disability onset date on June 17, 2009.[2] The Commissioner denied that claim on August 4, 2011, a decision the Appeals Council upheld on February 21, 2013. Plaintiff appealed to the District Court on May 2, 2013. The court issued its decision on June 30, 2015 reversing and remanding the matter for further proceedings.

After the Appeals Council upheld the denial of her SSI

---

individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[2] The claimant was 39 years old at the time of her first claim for SSI, which is defined as a younger individual (age 18-49). (20 C.F.R. § 416.963.)

2

claim for the alleged onset of disability of June 17, 2009, but before she appealed the decision to the District Court, Plaintiff filed a second application for SSI on April 17, 2013 alleging that date as her onset of disability. While her appeal before the District Court was pending, the Commissioner granted her second SSI disability claim on November 10, 2014.

Because of the approval of her second SSI claim for disability beginning on April 17, 2013, the issue before the ALJ on remand from the District Court for Plaintiff's first claim became whether Plaintiff was disabled from June 17, 2009 through April 16, 2013. A hearing was held on May 26, 2016, and the ALJ issued his decision on May 10, 2017 denying Plaintiff's claim for disability between June 17, 2009 and April 16, 2013. The ALJ's decision became final on July 10, 2017. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are

3

supported by "substantial evidence."  42 U.S.C. §§ 405(g),

1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);

Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Substantial evidence means more than "a mere scintilla."

Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting

Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

It means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Id.  The inquiry

is not whether the reviewing court would have made the same

determination, but whether the Commissioner's conclusion was

reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988).

    A reviewing court has a duty to review the evidence in

its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting

Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301,

303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB,

340 U.S. 474, 488 (1951)).

    The Commissioner "must adequately explain in the record

his reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

Circuit has held that an "ALJ must review all pertinent

medical evidence and explain his conciliations and

rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d

112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider

and weigh all of the non-medical evidence before him.  Id.

(citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.

1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and

evaluate the medical evidence presented, Fargnoli, 247 F.3d at

42, "[t]here is no requirement that the ALJ discuss in its

opinion every tidbit of evidence included in the record," Hur

v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of

5

judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).

Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful

6

work which exists in the national economy, regardless of
whether such work exists in the immediate area in which he
lives, or whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.  42 U.S.C. §
1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 416.920.  This five-step
process is summarized as follows:

1.    If the claimant currently is engaged in substantial
      gainful employment, he will be found "not disabled."

2.    If the claimant does not suffer from a "severe
      impairment," he will be found "not disabled."

3.    If the severe impairment meets or equals a listed
      impairment in 20 C.F.R. Part 404, Subpart P,
      Appendix 1 and has lasted or is expected to last for
      a continuous period of at least twelve months, the
      claimant will be found "disabled."

4.    If the claimant can still perform work he has done
      in the past ("past relevant work") despite the
      severe impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the
      claimant's ability to perform work ("residual
      functional capacity"), age, education, and past work
      experience to determine whether or not he is capable
      of performing other work which exists in the
      national economy.  If he is incapable, he will be

---

[3] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Neither Plaintiff nor
Defendant contend that any amendments affect the issues
presented on this appeal.

> found "disabled."  If he is capable, he will be
> found "not disabled."

20 C.F.R. § 416.20(b)-(f).

Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through the end of the relevant time period.  At

8

step two, the ALJ found that Plaintiff's cervical and lumbar degenerative disc disease with radiculopathy, diabetes mellitus, carpal tunnel syndrome, asthma, depression, and anxiety were severe. At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. Plaintiff did not have any past relevant work, but the ALJ determined that Plaintiff's residual functional capacity ("RFC") rendered her capable of performing unskilled work at the sedentary exertional level (steps four and five) during the period of June 17, 2009 and April 16, 2013.[4]

The ALJ determined Plaintiff's RFC to be as follows:

After careful consideration of the entire record, the undersigned finds that from June 17, 2009 through April 16, 2013, the claimant had the residual functional

---

[4] See 20 C.F.R. § 404.1568 (explaining that unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy."); 20 C.F.R. § 404.1567 (Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

capacity to perform sedentary work as defined in 20 CFR
416.967(a) except the claimant required the option to
stand or stretch every 20 minutes. The claimant could
never climb ladders or crawl. The claimant could only
occasionally climb stairs, balance, stoop, kneel, or
crouch and only frequently handle or finger. The
claimant could only occasionally be exposed to extreme
heat and humidity, or to pulmonary irritants. The
claimant was further limited to understanding,
remembering, and carrying out simple instructions where
public interaction was no more than occasional.

(R. at 451-52.)

Based on that RFC and the hypotheticals posed by the ALJ

to the VE at the hearing, the VE testified that someone with

Plaintiff's RFC would be capable of performing jobs such as an

assembly worker, inspector, and office clerical worker. (R.

at 459.)

Plaintiff argues that the ALJ erred in his formulation of

Plaintiff's RFC by not supporting his determination with

medical evidence but instead with only his lay speculations,

which he also used to reject the severity and nature of

Plaintiff's pain. Plaintiff also contends that those errors

were compounded when the ALJ failed to consider the Vocational

Expert's testimony regarding Plaintiff's "stand and stretch"

requirement in determining that jobs existed in the national

economy that Plaintiff was capable of performing.

1.   Whether the ALJ erred in his RFC determination

Focusing first on Plaintiff's objection to the ALJ's RFC

10

assessment, in making the RFC assessment the ALJ was required to consider all evidence before him. "In doing so, an ALJ may not make speculative inferences from medical reports," he is "not free to employ [his] own expertise against that of a physician who presents competent medical evidence," and "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). What the Third Circuit admonished in Plummer is what Plaintiff contends the ALJ did in this case. The Court does not agree.

The ALJ detailed the medical evidence in the record, which spanned from April 2009 through April 2011. Notably, despite claiming disability through April 16, 2013, the record does not contain any treatment records from May 2011 through April 16, 2013. (R. at 455.) During those two years documented in the record, the ALJ noted that beginning in 2009, Plaintiff suffered from impairments of her lumbar and cervical spine, which caused her pain, and required her to use a cane. The ALJ related that by February 2010, physical therapy and anti-inflammatory medications had not provided any relief for her pain, and a right LS-S1 transforaminal epidural steroid injection was recommended.

On July 13, 2010, Plaintiff had her first epidural injection, which was helpful for pain in her lower back. Because she had pain in her neck and left shoulder, on August 5, 2010 Plaintiff had a left shoulder trigger point injection, which she reported was also helpful.  At that time, on examination and based on her own reports, Plaintiff was feeling better overall, and she had near full motion of the left shoulder and 5/5 strength throughout.

On December 7, 2010, Plaintiff complained of left wrist pain, but she had only slightly decreased left grip, x-rays of the left wrist from December 20, 2010 were negative, and an MRI on that same date of the cervical spine revealed that her C5-6 disc herniation had regressed slightly when compared with the April 3, 2010 study.  The MRI also showed a C5-6 disc herniation produced minimal impression on the cord and a small left disc protrusion was noted at C6-7 with no cord compression, which was unchanged from the prior study.

The last treatment note for her physical impairments on April 1, 2011 related that after a second epidural injection, Plaintiff reported that her right lower extremity pain had completely resolved and she stated that she still has lower back pain, "but that it is okay."  On examination, Plaintiff had cervical and paraspinal tenderness, but straight leg

raising was negative, deep tendon reflexes were 2+ (i.e., normal), motor strength was 5/5, and sensory functioning was intact.

With regard to her mental impairments, the ALJ noted that during the relevant time period, Plaintiff's treating psychiatrist, Dr. Stephen Grelecki, had only seen her two times on July 1, 2010 and October 4, 2010. He determined that Plaintiff (1) had moderate restriction of the activities of daily living, (2) had marked difficulties in maintaining social functioning, (3) had extreme difficulties in maintaining concentration, persistence, or pace, (4) had no episodes of decompensation, and (5) would be absent from work more than 4 days per month.

After detailing the medical evidence of Plaintiff's physical and mental impairments from her treating sources, as well the reports of three consultative examiners, the ALJ explained the weight he afforded each opinion, and how the medically established impairments supported Plaintiff's RFC.

For Dr. Grelecki, the ALJ explained:

Dr. Grelecki's opinion is inconsistent with the claimant's [activities of daily living], since he notes that the claimant has marked difficulties in maintaining social functioning and extreme difficulties in maintaining concentration, persistence, or pace, but the claimant was able to live independently, do housework, and care for her children (Exhibit 20F). Dr. Grelecki's

13

opinion is also inconsistent with the nature of the
treatment that he provided and is not well supported by
signs or medical findings.  Dr. Grelecki notes that the
claimant has anhedonia and recurrent severe panic
attacks, but this is not well documented in the record.
Additionally, the undersigned notes that reports from
early 2009 indicate that the claimant was able to travel
to Puerto Rico and stay for 3 months (Exhibit 5F) and
that on October 22, 2010, the claimant was cleared to
attend gym 3 times a week, at her request (Exhibit 19F).
Thus, it appears that the claimant was active and able to
pursue her interests despite her mental and physical
impairments.[5]

---

[5] The ALJ also referred to a May 25, 2011 letter report by Dr.
Grelecki, which stated:

To Whom It May Concern

Elizabeth Guzman has [been] receiving treatment under my
care at Trinitas Regional Medical Center Outpatient
Department since July 1, 2010.  She is diagnosed with
Depressive Disorder NOS, Anxiety Disorder NOS, and
Asthma.  It is medically necessary for her to have air
conditioning in her home during the summer months.

Thank you,
Stephen Grelecki, MD

(R. at 442.)  The ALJ addressed the letter in his decision by
stating, "Dr. Grelecki stated that a home air conditioner was
medically necessary during the summer months but did not state
that the claimant is totally disabled (Exhibit 24F).  The
undersigned notes that the issue of disability is reserved to
the Commissioner and that Dr. Grelecki is less knowledgeable
than the state doctors about SSA's definition of disability."
(R. at 457.)

Plaintiff takes issue with this statement, arguing that the
ALJ considers Dr. Grelecki's silence on whether he finds
Plaintiff disabled or not to undermine the severity of her
mental impairments, but in the same breath, chastises him if
he would have made such a statement, since the determination
of whether a claimant is "disabled" under the regulations is
for the ALJ and not a physician.  While Plaintiff's point is

(R. at 457.)

The ALJ also considered a June 25, 2010 report to Work
First New Jersey by Dr. Groves, who treated Plaintiff for her
physical impairments.  The ALJ assigned little weight to Dr.
Groves' estimation of Plaintiff's disability from June 25,
2010 to June 25, 2011, and the finding that Plaintiff could
not lift more than 10 pounds, and cannot bend, stoop, or
climb.  (R. at 456.)  The ALJ accorded little weight to this
opinion because it was inconsistent with the record as a whole
and Plaintiff's reported activities.  (Id.)

The ALJ also discussed the weight he afforded to the
consultative examiners' reports.  In a December 16, 2009 Case
Analysis report, Dr. Shapiro, a non-examining state agency
medical consultant, noted that (1) Plaintiff was not in
psychiatric treatment and was not prescribed psychiatric

---

well-taken when the ALJ's statement is read literally, the
Court construes that statement to mean that the most recent
report from Plaintiff's treating psychiatrist, which is a
brief letter almost a year after the last visit with Dr.
Grelecki on October 4, 2010, does not support the severity of
the limitations Plaintiff claims, especially when contrasted
against her daily living activities.  By only recommending air
conditioning during the summer the ALJ construed Dr.
Grelecki's statement as unsupportive of a finding of disabling
mental impairments.  On the record as a whole, the ALJ's
characterization of the Grelecki letter is not legal error.

medication, (2) Plaintiff's activities of daily living did not report any limitations with following directions, getting along with others, handling stress, or change in routine, (3) Plaintiff got along very well with authority figures, cared for her children, managed her finances, shopped, traveled, prepared meals, and did household chores, and (4) noted that he felt that psychiatric development was not indicated. (R. at 455.) The ALJ assigned little weight to this assessment because the record as a whole supported Plaintiff had some mental limitations. (Id.)

On January 4, 2010, Dr. Potashnik performed a consultative examination as to Plaintiff physical impairments, where he noted that, among other findings, Plaintiff's gait was normal without the cane during the examination, she was independent with dressing and mounting the exam table, and she was able to squat holding onto the exam table, and was able to walk on heels and tiptoes. (Id.) The ALJ afforded Dr. Potashnik's opinion little weight because even though it was based on an examination of Plaintiff, the record as a whole supported that Plaintiff was more limited in her physical functioning during the adjudication period. (R. at 456.)

In a January 13, 2010 RFC report, Dr. Bustos, a non-examining state agency medical consultant, found that

Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk at least 2 hours in an 8-hour day, sit 6 hours in an 8-hour day, and perform unlimited pushing and/or pulling, but she could not climb ladders, ropes, or scaffolds, but could perform all other postural functions occasionally. (Id.) The ALJ assigned some weight to Dr. Bustos assessment because it was based on a review of the medical evidence of record. (Id.)

Based on the foregoing, the ALJ concluded that Plaintiff had reported daily activities that were not limited to the extent one would expect given Plaintiff's complaints of disabling symptoms and limitations, and Plaintiff's treatment had been essentially routine and conservative in nature, including medication and regular doctor's appointments. The ALJ determined that despite the evidence demonstrating that Plaintiff had suffered from medically determinable "severe" impairments, the evidence also established that Plaintiff retained the capacity to function adequately to perform many basic activities associated with work. (R. at 457.)

Plaintiff argues that the ALJ came to this conclusion out of thin air by substituting his own perceptions of how Plaintiff's daily activities contradicted the disabling nature

of her physical and mental impairments.  The Court does not

agree.  The ALJ recounted the medical evidence, which

documented the successes of Plaintiff's treatment for her

physical impairments, and otherwise related less than totally

disabling manifestations of her impairments, including her

mental impairments.  The ALJ also detailed Plaintiff's daily

activities, as she self-reported in the disability claim

process, as well as through her reports to treating and

consultative physicians.  The ALJ did not conjure the

comparison between her daily living activities and the extent

of the physical and mental impairments from the ether – the

medical evidence provided the contrast.  Moreover, the ALJ

determined that Plaintiff suffered from limitations more

severe than two of the consultative examiners, which

demonstrates that the ALJ credited Plaintiff's subject

complaints and the corroborating medical evidence from

Plaintiff's treating physicians.

Based on this detailed analysis, the Court finds that the

ALJ properly supported his RFC determination.[6]  See Plummer v.

---

[6] The Court acknowledges that Plaintiff's second SSI claim was
granted for disability beginning on April 17, 2013.  (See
Docket No. 12 at 6 n.1.)  Thus, the SSA found that Plaintiff
was "disabled" as of that date because she suffered from
medically determinable physical or mental impairments that
lasted, or were expected to last, for a continuous period of

<u>Apfel</u>, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is

_____

at least twelve months.  20 C.F.R. § 416.909.  That finding is
not incongruous with the determination that Plaintiff was not
disabled prior to April 17, 2013, particularly when
considering the complete absence in the record here of
treatment records from May 2011 through April 16, 2013.  In
order to obtain SSI, a definitive disability date must be
determined.  <u>See</u> 20 C.F.R. § 416.202 (claimant is not eligible
for SSI until, among other factors, the date on which he files
an application for SSI benefits); 20 C.F.R. § 416.501
(claimant may not be paid for SSI for any time period that
predates the first month he satisfies the eligibility
requirements, which cannot predate the date on which an
application was filed).  For Plaintiff, that date is April 17,
2013 and not before.

Relatedly, Plaintiff takes issue with the ALJ's use of the
term "closed period" for Plaintiff's claim that she was
disabled before April 17, 2013, beginning on June 17, 2009.  A
"closed period" is a term of art in the SSA meaning "the
period of disability with a definite beginning date and a
definite ending date that the adjudicator establishes at the
time of adjudication."  SSA - POMS: DI 25510.001 - Closed
Period of Disability.  That term as defined by the SSA usually
applies when a claimant has returned to work or has died.  In
this case, Plaintiff did not return to work, but rather was
deemed disabled as of April 17, 2013, and the ALJ's task was
to effectively determine whether Plaintiff's disability had an
earlier onset date.  The Court does not find that ALJ erred in
referring to the time period at issue here – June 17, 2009
through April 16, 2013 – as "closed" because ALJ was required
to determine a "definite beginning date and a definite ending
date."  Moreover, it is clear from the ALJ's written opinion
that he was aware of Plaintiff's application for disabled
status as of April 17, 2013 and we surmise also likely aware
of the favorable determination in November 2014 since the
request for a "closed" period was made by the Plaintiff's
counsel. (R. at 446.)  Even if the ALJ was unaware of the
November 2014 determination, nothing in the record suggests
that characterizing the period relevant here as "closed", a
request actually made by the Plaintiff, improperly influenced
or changed the reasoning or process of the ALJ in this matter.

permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects").

**2.   Whether the ALJ erred at Step Five**

Plaintiff also argues that the ALJ erred by including a "stand and stretch" requirement in Plaintiff's RFC but not considering how that requirement would impact Plaintiff's ability to perform the jobs suggested by the VE.  Plaintiff also argues that the ALJ's hypothetical questioning to the VE did not reasonably convey the extent of Plaintiff's mental limitations.

Plaintiff's arguments are unavailing.  A hypothetical posed by the ALJ must accurately portray the claimant's

impairments, but only those impairments that are credibly established.  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).  Plaintiff contends that the ALJ did not pose proper hypotheticals to the VE because the ALJ erred in formulating the RFC regarding her mental impairments.  Because the Court has determined that substantial evidence supports the ALJ's RFC determination, however, the ALJ's hypotheticals based on that RFC satisfy the ALJ's obligation at Step Five.

Plaintiff also challenges the effect of a "stand and stretch" requirement on Plaintiff's ability to perform the jobs suggested by the VE.  The VE testified that the "stand and stretch" requirement would not erode the jobs available "[a]ssuming that [a] brief period of time does not interfere with work, for the stretch."  (R. at 490.)  Plaintiff argues that for the assembly worker job, for example, it would not be possible to remain on task while standing and stretching at the sedentary work bench every 20 minutes, and the VE's "assumption" of no effect on the ability to do that job is unsupported, and therefore improperly relied upon by the ALJ for the Step Five determination.

There are two reasons why this argument is not persuasive.  First, Plaintiff's argument that the assembly worker job – or any job – would not be properly performed if

she took stretch breaks every 20 minutes is Plaintiff's own opinion unsupported by the record. Plaintiff's opinion does not compel a reversal and remand of the ALJ's decision. See, e.g., <u>Gardner v. Commissioner of Social Security</u>, 2017 WL 4316877, at *6 (D.N.J. 2017) ("Other than Plaintiff's interpretation of these jobs, there is no support in the record that these positions do not match Plaintiff's RFC. Plaintiff does not provide any support for his contention that the lens inserter and cuff folder positions are 'production' based (excluded by the RFC) and not 'goal orientated' (permitted by the RFC). Even if they were, Plaintiff does not provide any support for his view that a surveillance system monitor is more than unskilled work.").

Second, the RFC did not impose a requirement that Plaintiff would have to stand and stretch every 20 minutes. Instead, the RFC provided that she was required to have the "option" to stand and stretch every 20 minutes. ("[T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant required the option to stand or stretch every 20 minutes." R. at 451.) A lack of specificity as to the number of times Plaintiff would utilize that option and the length of such breaks is not fatal to a finding that Plaintiff would be

capable of performing the suggested jobs based on Plaintiff's overall RFC. See, e.g., McQueen v. Commissioner of Social Sec., 2010 WL 3810707, at *4 (D.N.J. 2010) (distinguishing Boone v. Barnhardt, 353 F.3d 203, 210 (3d Cir. 2004), where the claimant's RFC that required the option to sit and stand at will every thirty minutes eroded her ability to perform light work, from the plaintiff's RFC, which required only the option to stand/stretch for three to five minutes every forty-five minutes, and finding that the stand and stretch option did not "preclude work by any means").

The Court therefore finds that the ALJ satisfied his obligations at Step Five by identifying jobs in significant numbers that do not conflict with Plaintiff's RFC, and by determining that Plaintiff, with her specific RFC, was capable of performing other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1566 ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

**III. CONCLUSION**

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports

the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d

645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d

1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal

principal is that a district court is not empowered to weigh

the evidence or substitute its conclusions for those of the

ALJ).  The Court finds in this case the ALJ's determination

that Plaintiff was not totally disabled from June 17, 2009

through April 16, 2013 is supported by substantial evidence.

The decision of the ALJ is therefore affirmed.

  An accompanying Order will be issued.


Date:  December 12, 2018     s/ Noel L. Hillman
At Camden, New Jersey   NOEL L. HILLMAN, U.S.D.J.